592-07MEU/SL
FREEHILL HOGAN & MAHAR, LLP
Attorneys for Plaintiffs
ELOI MARITIME LIMITED and CENATA SHIPPING CO LTD.
80 Pine Street
New York, NY 10005
(212) 425-1900
(212) 425-1901 fax
Michael E. Unger (MU 0045)



UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

07 CV 1049 6

-----------------------------------------------------------------------x
ELOI MARITIME LIMITED and CENATA SHIPPING CO LTD.,

          Plaintiffs,

07 Civ _____ (__)

-against-

**VERIFIED COMPLAINT**

SLS SHIPBUILDING CO., LTD., a/k/a
SHINA SHIPBUILDING CO., LTD.,

          Defendant.
-----------------------------------------------------------------------

      Plaintiffs, ELOI MARITIME LIMITED (hereinafter "ELOI") and CENATA SHIPPING CO LTD. (hereinafter "CENATA") for their Verified Complaint against Defendant SLS SHIPBUILDING CO., LTD. a/k/a SHINA SHIPBULDING CO., LTD. (hereinafter "SLS") allege upon information and belief as follows:

      1.     This is an admiralty and maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure in that it involves claims for the breach of a warranty of quality affecting vessels in navigation. This case also falls under this Court's admiralty and maritime jurisdiction pursuant to 28 U.S.C. §1333 and the Court's federal question jurisdiction pursuant to 28 U.S.C. §1331 in that the action arises under the New York Convention on the Recognition and Enforcement of Foreign Arbitral Awards, codified at 9 U.S.C. §201 *et seq.* and/or the Federal Arbitration Act, 9 U.S.C. §1 *et seq.*.

NYDOCS1/294018.1

2. At all times material hereto, Plaintiff ELOI was and still is a foreign business entity duly organized and existing under the laws of a foreign country with an address at 18/2 South Street, Valletta Vlt 11, Malta.

3. At all times material hereto, Plaintiff CENATA was and still is a foreign business entity duly organized and existing under the laws of a foreign country with an address at 18/2 South Street, Valletta Vlt 11, Malta.

4. At all times relevant hereto, Defendant SLS was and still is a foreign business entity duly organized and existing under the laws of a foreign country with an address at 227, Donam-Dong, Tongyeong, Gyongnam, Korea.

## COUNT ONE

5. On or about June 18, 2002, Plaintiff ELOI entered into a contract with Defendant SLS for the design, construction, launch and sale of a Single Screw Diesel Engine Driven 37,000 Deadweight Tons Product/Steel Tanker with Hull No. SAS-429 in accordance with the provisions of the contract (hereinafter, the "M/T HOPE A").

6. Once the vessel was reasonably completed in accordance with the contract specifications, the M/T HOPE A was to undergo sea-trials, after which Plaintiff ELOI was required to accept or reject the vessel depending on the results of the sea-trials.[1] Article VI of the contract.

7. The vessel was fixed to be delivered into navigation by Defendant SLS ready for acceptance by Plaintiff ELOI on or before September 30, 2004. Article VII of the contract.

8. Delivery and acceptance of the M/T HOPE A was to signify the point that title to and risk of loss of the vessel would pass to Plaintiff ELOI from Defendant SLS. Article VII of the contract.

---

[1] "Sea-trials" is a vessel's trial run at sea performed for the purpose of testing the vessel's conformity with the contact specifications.

9. Defendant SLS furnished a Warranty of Quality (hereinafter, "Warranty") for the period of twelve (12) months (hereinafter, the "guarantee period") after SLS's delivery of the M/T HOPE A into navigation and ELOI's acceptance thereof. Article IX of the contract.

10. Pursuant to the Warranty, Defendant SLS guaranteed the M/T HOPE A and her engine, including all parts and equipment manufactured, furnished or installed by SLS under the contract, and including the machinery, equipment, coating and appurtenances thereof, under the contract. Defendant SLS further guaranteed against all defects discovered within the guarantee period which are due to defective material, faulty construction design, miscalculation and/or poor workmanship or negligent or other improper acts or omissions on the part of SLS or its subcontractors. Article IX of the contract.

11. The guarantee period of the Warranty was to extend for an additional twelve (12) months if Defendant SLS was required to repair or replace defective parts or materials on the M/T HOPE A. Article IX of the contract.

12. Plaintiff ELOI was required to notify SLS in writing of any defects it claimed under the Warranty. Article IX of the contract.

13. Upon receipt of such notice, Defendant SLS was obligated to remedy any defect covered by the Warranty at SLS's expense whether repairs were performed by SLS or performed elsewhere for which costs were reimbursed by SLS. Article IX of the contract.

14. Plaintiff ELOI fully performed all of its obligations in accordance with the terms of the contract.

15. On or about November 13, 2004, Defendant SLS duly delivered the M/T HOPE A into navigation, and Plaintiff ELOI duly accepted ownership thereof.

16. During the guarantee period of the Warranty, Plaintiff ELOI discovered over 85 defects covered by the Warranty.

17. In accordance with the Warranty, Plaintiff ELOI promptly notified Defendant SLS in writing of the defects.

18. However, in breach of the Warranty, Defendant failed to adequately perform its obligation to remedy defects covered by the Warranty.

19. The parties ultimately agreed to settle all of the outstanding Warranty claims for the modest sum of $10,000.

20. In further breach of the Warranty and Settlement Agreement, and despite due demand, Defendant SLS has failed and/or otherwise refused to pay any amounts due and outstanding under the Warranty and Settlement Agreement, and the entire amount of $10,000 remains due and outstanding.

21. The contract provides for the application of English law and disputes between the parties to be resolved by arbitration in London, and Plaintiff ELOI specifically reserves its right to arbitrate the substantive matters at issue. Arbitration has been or will soon be commenced.

22. This action is brought *inter alia* pursuant to 9 U.S.C. §8 in order to obtain security for ELOI's claim made or to be made in arbitration in London, England under English law, as agreed by the parties.

23. As a regular feature of English law and arbitration, attorneys fees are awarded to the successful litigant, along with costs, disbursements and the cost of the arbitration, all of which constitutes a part of the Plaintiff's claim and the amount sued for herein.

24. Plaintiff estimates, as nearly as can be computed, that the legal expenses and costs of prosecuting the claim in London arbitration will be $7,500 and interest on its damages are estimated to be $1,716.59 (calculated at the rate of 8% per annum compounded quarterly for a period of 8 years, the estimated time for completion of the proceedings in London).

25. In all, the claim for which Plaintiff ELOI sues in this action, as near as presently may be estimated, totals $19,216.59, no part of which has been paid by Defendant SLS. ELOI specifically reserves its right to amend this figure and to seek an increase in the amount of security should such sum appear to be insufficient to fully secure ELOI.

## COUNT TWO

26. On or about January 24, 2003, Plaintiff CENATA entered into a contract with Defendant SLS for the design, construction, launch and sale of a Single Screw Diesel Engine Driven 37,000 Deadweight Tons Product/Chemical Tanker with Hull No. SAS-435 in accordance with the provisions of the contract (hereinafter, the "M/T MARINER A").

27. Once the vessel was reasonably completed in accordance with the contract specifications, the M/T MARINER A was to undergo sea-trials, after which Plaintiff CENATA was required to accept or reject the vessel depending on the results of the sea-trials.[2] Article VI of the contract.

28. The vessel was fixed to be delivered into navigation by Defendant SLS ready for acceptance by Plaintiff CENATA on or before March 31, 2005. Article VII of the contract.

29. Delivery and acceptance of the M/T MARINER A was to signify the point that title to and risk of loss of the vessel would pass to Plaintiff CENATA from Defendant SLS. Article VII of the contract.

30. Defendant SLS furnished a Warranty of Quality (hereinafter, "Warranty") for the period of twelve (12) months (hereinafter, the "guarantee period") after SLS's delivery of the M/T MARINER A into navigation and CENATA's acceptance thereof. Article IX of the contract.

---

[2] "Sea-trials" is a vessel's trial run at sea performed for the purpose of testing the vessel's conformity with the contact specifications.

31. Pursuant to the Warranty, Defendant SLS guaranteed the M/T MARINER A and her engine, including all parts and equipment manufactured, furnished or installed by SLS under the contract, and including the machinery, equipment, coating and appurtenances thereof, under the contract. Defendant SLS further guaranteed against all defects discovered within the guarantee period which are due to defective material, faulty construction design, miscalculation and/or poor workmanship or negligent or other improper acts or omissions on the part of SLS or its subcontractors. Article IX of the contract.

32. The guarantee period of the Warranty was to extend for an additional twelve (12) months if Defendant SLS was required to repair or replace defective parts or materials on the M/T MARINER A. Article IX of the contract.

33. Plaintiff CENATA was required to notify SLS in writing of any defects it claimed under the Warranty. Article IX of the contract.

34. Upon receipt of such notice, Defendant SLS was obligated to remedy any defect covered by the Warranty at SLS's expense whether repairs were performed by SLS or performed elsewhere for which costs were reimbursed by SLS. Article IX of the contract.

35. Plaintiff CENATA fully performed all of its obligations in accordance with the terms of the contract.

36. On or about February 21, 2005, Defendant SLS duly delivered the M/T MARINER A into navigation, and Plaintiff CENATA duly accepted ownership thereof.

37. During the guarantee period of the Warranty, Plaintiff CENATA discovered over 74 defects covered by the Warranty.

38. In accordance with the Warranty, Plaintiff CENATA promptly notified Defendant SLS in writing of the defects.

39. However, in breach of the Warranty, Defendant failed to adequately perform its obligation to remedy defects covered by the Warranty.

40. The parties ultimately agreed to settle all of the outstanding Warranty claims for the modest sum of $10,000.

41. In further breach of the Warranty and Settlement Agreement, and despite due demand, Defendant SLS has failed and/or otherwise refused to pay any amounts due and outstanding under the Warranty and Settlement Agreement, and the entire amount of $10,000 remains due and outstanding.

42. The contract provides for the application of English law and disputes between the parties to be resolved by arbitration in London, and Plaintiff CENATA specifically reserves its right to arbitrate the substantive matters at issue. Arbitration has been or will soon be commenced.

43. This action is brought *inter alia* pursuant to 9 U.S.C. §8 in order to obtain security for CENATA's claim made or to be made in arbitration in London, England under English law, as agreed by the parties.

44. As a regular feature of English law and arbitration, attorneys fees are awarded to the successful litigant, along with costs, disbursements and the cost of the arbitration, all of which constitutes a part of the Plaintiff's claim and the amount sued for herein.

45. Plaintiff estimates, as nearly as can be computed, that the legal expenses and costs of prosecuting the claim in London arbitration will be $7,500 and interest on its damages are estimated to be $1,716.59 (calculated at the rate of 8% per annum compounded quarterly for a period of 2 years, the estimated time for completion of the proceedings in London).

46. In all, the claim for which Plaintiff CENATA sues in this action, as near as presently may be estimated, totals $19,216.59, no part of which has been paid by Defendant SLS.

CENATA specifically reserves its right to amend this figure and to seek an increase in the amount of security should such sum appear to be insufficient to fully secure CENATA.

## REQUEST FOR RULE B RELIEF

47. Upon information and belief, and after investigation, Defendant cannot be "found" within this District for the purpose of Rule B of the Supplemental Rules of Certain Admiralty and Maritime Claims, but Plaintiffs believe that Defendant has, or will shortly have, assets within this District comprising, *inter alia*, cash, funds, escrow funds, credits, debts, wire transfers, electronic funds transfers, accounts, letters of credit, freights, sub-freights, charter hire and/or sub-charter hire, of, belonging to, due or for the benefit of Defendant SLS SHIPBUILDING CO., LTD., a/k/a SHINA SHIPBULDING CO., LTD. (collectively hereinafter, "ASSETS"), including but not limited to ASSETS in its name and/or being transferred for its benefit at, moving through, or being transferred and/or wired to or from banking institutions or such other garnishees who may be served with a copy of the Process of Attachment issued herein.

48. The total amount sought to be attached pursuant to the above is $38,433.18.

WHEREFORE, Plaintiffs ELOI MARITIME LIMITED and CENATA SHIPPING CO LTD. pray:

    a.    That process in due form of law according to the practice of this Court may issue against Defendant citing it to appear and answer the foregoing;

    b.    That if Defendant cannot be found within this District pursuant to Supplemental Rule B that all tangible or intangible property of Defendant up to and including **$38,433.18** be restrained and attached, including, but not limited to any cash, funds, escrow funds, credits, debts, wire transfers, electronic funds transfers, accounts, letters of credit, freights, sub-freights, charter hire and/or sub-charter

hire, of, belonging to, due or being transferred from or for the benefit of Defendant SLS SHIPBUILDING CO., LTD., a/k/a SHINA SHIPBUILDING CO., LTD., including but not limited to ASSETS in its name and/or being transferred for its benefit at, through, or within the possession, custody or control of such banking institutions and/or any such other garnishees who may be served with a copy of the Process of Maritime Attachment and Garnishment issued herein;

c.  That this Court retain jurisdiction over the matter for any further or supplemental proceedings as may be necessary, including but not limited to the recognition and enforcement of any award entered against the Defendant in the London proceedings; and

d.  For such other, further and different relief as this Court may deem just and proper in the premises.

Dated: New York, New York
       November 20, 2007

> FREEHILL HOGAN & MAHAR, LLP
> Attorneys for Plaintiffs
> ELOI MARITIME LIMITED and
> CENATA SHIPPING CO LTD.
>
> By: _____
>     Michael E. Unger (MU 0045)
>     80 Pine Street
>     New York, NY 10005
>     (212) 425-1900

**ATTORNEY VERIFICATION**

State of New York   )
                    ) ss.:
County of New York  )

      MICHAEL E. UNGER, being duly sworn, deposes and says as follows:

1. I am an associate with the law firm of Freehill Hogan & Mahar, LLP, attorneys for Plaintiffs in this action, I have read the foregoing Verified Complaint and know the contents thereof, and the same is true to the best of my knowledge, information and belief.

2. The sources of my information and the grounds for my belief are communications, information and documentation provided by our clients and/or by solicitors representing our clients.

3. The reason this verification is made by an attorney and not by the Plaintiffs is because the Plaintiffs are foreign entities, none of whose officers are presently within this Judicial District.

                                                                             Michael E. Unger

Sworn to before me this
20th day of November 2007

_____
Notary Public

MELISSA COLFORD
Commissioner of Deeds
City of New York-No. 5-1692
Certificate Filed in New York
Commission Expires 4/1/ﾟﾟ

NYDOCS1/294018.1                                                  10